******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MERINDA J. SEMPEY *v.* STAMFORD HOSPITAL
(AC 42215)

Keller, Bright and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant in connection
with the alleged wrongful termination of her employment by the defen-
dant, alleging claims for wrongful discharge in violation of an implied
contract, negligent infliction of emotional distress, and a violation of
the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.).
After the trial court granted the defendant's motion to strike all three
counts, the plaintiff filed a substitute complaint, recasting the first count
as one sounding in racial discrimination in her discharge from employ-
ment. Thereafter, the plaintiff filed an amended substitute complaint,
amending the allegations in the second and third counts. The defendant
filed another motion to strike all three counts, and a motion to dismiss
the first count. The trial court granted the motion to strike and rendered
a judgment of dismissal as to the entire complaint, from which the
plaintiff appealed to this court, which affirmed the dismissal of count
one but reversed the judgment of dismissal as to counts two and three
because the defendant did not seek a dismissal of those counts. On
remand, the plaintiff filed another substitute complaint setting forth
four counts, which alleged claims for wrongful discharge in breach
of an implied employment contract, defamation, negligent infliction of
emotional distress, and a violation of CUTPA. After the trial court granted
the defendant's motion to strike each count, the plaintiff filed another
substitute complaint incorporating counts one, two, and four from her
previously stricken complaint and repleading count three. The trial court,
again, granted the defendant's motion to strike the complaint and also
granted a motion for judgment filed by the defendant. From the judgment
rendered thereon, the plaintiff appealed to this court, claiming that the
trial court improperly struck each count of her operative complaint.
*Held*:

1. The trial court properly struck the first count of the plaintiff's operative
complaint; the factual allegations contained in the plaintiff's complaint
for wrongful termination in breach of an implied contract neither set
forth the facts essential to the establishment of an implied contract nor
specified any particular public policy that was alleged to have been
implicated by her discharge from the defendant's employ.

2. The trial court properly struck the second count of the plaintiff's operative
complaint alleging defamation, in which the plaintiff alleged that the
defendant had made false statements regarding the reason for the plain-
tiff's termination when it contested the plaintiff's claim for unemploy-
ment benefits; there was nothing in the record that indicated that the
plaintiff sought the permission of the court or the agreement of the
defendant to amend her complaint by adding a new cause of action
after the case was remanded to the trial court by this court, and it was
clear that any statements made by representatives of the defendant
before the Employment Security Division of the Department of Labor
when contesting the plaintiff's eligibility for unemployment benefits
were absolutely privileged because such proceedings were quasi-judicial
in nature.

3. The plaintiff could not prevail on her claim that the trial court improperly
struck the third count of the operative complaint, in which she alleged
a claim for negligent infliction of emotional distress based on the defen-
dant's conduct in improperly withholding from her three personal folders
that contained various certificates and personal records when it dis-
charged her from employment, and in making false allegations of wrong-
doing when it contested her eligibility for unemployment benefits; state-
ments made by representatives of the defendant before the Employment
Security Division of the Department of Labor when contesting the plain-
tiff's eligibility for unemployment benefits were absolutely privileged
because such proceedings were quasi-judicial in nature, and with respect
to the plaintiff's claim that the defendant improperly withheld from her

the three personal folders, the plaintiff made no allegation that the documents in those folders were irreplaceable or of such value that it was patently unreasonable for the defendant to withhold them.

4. The trial court properly struck the fourth count of the plaintiff's operative complaint alleging a violation of CUTPA; the plaintiff did not allege any acts committed by the defendant in the conduct of any trade or commerce, the allegations she did make clearly fell outside of CUTPA, and the only posttermination conduct relied on by the plaintiff were statements made by the defendant to the Employment Security Division of the Department of Labor, which were protected by an absolute privilege, and could not be used as a basis for the CUTPA claim.

Argued September 11—officially released November 26, 2019

*Procedural History*

Action to recover damages for, inter alia, the plaintiff's alleged wrongful termination, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. Richard P. Gilardi*, judge trial referee, granted the defendant's motion to strike; thereafter, the court granted the defendant's motion to dismiss and rendered a judgment of dismissal, from which the plaintiff appealed to this court, which reversed the judgment in part and remanded the case for further proceedings; subsequently, the court, *Radcliffe, J.*, granted the defendant's motions to strike; thereafter, the court granted the defendant's motion for judgment and rendered judgment in favor of the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Laurence V. Parnoff*, for the appellant (plaintiff).

*Justin E. Theriault*, with whom, on the brief, was *Beverly W. Garofalo*, for the appellee (defendant).

*Opinion*

BRIGHT, J. The plaintiff, Merinda J. Sempey, a former employee of the defendant, Stamford Hospital, appeals from the judgment of the trial court, rendered following the court's decision striking all four counts of the plaintiff's operative complaint. On appeal, the plaintiff claims that the court committed error because she sufficiently had pleaded causes of action for wrongful discharge, defamation, negligent infliction of emotional distress, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

We begin with the procedural history of this case. The plaintiff commenced this action against the defendant in September, 2014, sounding in three counts: (1) wrongful discharge in violation of an implied contract, (2) negligent infliction of emotional distress, and (3) a violation of CUTPA. On November 26, 2014, the defendant filed a motion to strike each count of the complaint. As to count one, the defendant argued that a cause of action for wrongful discharge could not be maintained because the plaintiff had been an at-will employee. As to count two, the defendant alleged that the plaintiff's complaint failed to set forth any conduct that rose to the level required to maintain a cause of action for negligent infliction of emotional distress. As to count three, the defendant alleged that CUTPA does not apply in the context of an at-will employment relationship. The court granted the motion to strike on August 6, 2015.

On August 20, 2015, the plaintiff filed a substitute complaint, recasting the first count of her original complaint as one sounding in racial discrimination in her discharge from employment in violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-60 et seq. Counts two and three substantively were similar to the original complaint. On September 10, 2015, the defendant filed a motion to strike each count of the substitute complaint. As to count one, the defendant argued that the plaintiff had failed to assert her claim for racial discrimination within the ninety day limitations period set forth in General Statutes § 46a-101 (e).[1] As to the second and third counts, the defendant alleged that the plaintiff had made no substantive changes from the original complaint, which the court already had stricken as insufficient. The defendant also filed a motion to dismiss count one of the plaintiff's complaint because it was not filed within the ninety day limitations period set forth in § 46a-101 (e).

By agreement of the parties, the defendant withdrew its motions to strike and to dismiss, and, on September 18, 2015, the plaintiff filed an amended substitute complaint; she amended only the allegations in the second and third counts. On September 21, 2015, the defendant filed a motion to strike each count of the plaintiff's

amended substitute complaint and a motion to dismiss the first count of the complaint for the same reasons set forth in the previous motions. On January 6, 2016, the court granted the defendant's motion to strike, and it rendered a judgment of dismissal *as to the entire complaint*.[2] The plaintiff appealed from that judgment. This court affirmed the dismissal, on timeliness grounds, of count one of the plaintiff's amended substitute complaint, but reversed the judgment of dismissal as to counts two and three because the defendant had not moved to dismiss those counts and sought only to strike them. See *Sempey* v. *Stamford Hospital*, 180 Conn. App. 605, 624, 184 A.3d 761 (2018). This court held: "[T]he trial court properly dismissed count one of the amended substitute complaint as untimely. The court, however, in the absence of a motion to dismiss, lacked the authority to dismiss the second and third counts of the amended substitute complaint *without affording the plaintiff the opportunity either to defend herself against a motion to dismiss those counts or to replead the stricken counts*." (Emphasis added.) Id.

On remand, the plaintiff, on April 6, 2018, filed another substitute complaint setting forth *four counts* against the defendant: (1) wrongful discharge in breach of an implied employment contract, (2) defamation, (3) negligent infliction of emotional distress, and (4) a violation of CUTPA.[3] On May 3, 2018, the defendant filed a motion to strike each count of the complaint, *with prejudice*, and a supporting memorandum. As to count one, the defendant alleged that it was substantially similar to count one of the original complaint, which already had been stricken long ago, that the plaintiff had been an at-will employee, and that it failed to set forth a cognizable claim for wrongful discharge. As to count two, the defendant alleged that any statements relied on by the plaintiff were protected by absolute privilege because they occurred in connection with unemployment proceedings before the Employment Security Division of the Department of Labor, which are quasi-judicial proceedings. As to counts three and four, the defendant alleged that the court previously had stricken these causes of action on two occasions, and the plaintiff's repleaded allegations were not materially different from those previously stricken for insufficiency. It also alleged that counts three and four should be stricken on their merits. The defendant further asked the court to strike the complaint in its entirety *with prejudice* due to the plaintiff's repeated failure to plead viable causes of action. The defendant also requested that the court enter sanctions against the plaintiff by awarding it attorney's fees incurred in filing yet another motion to strike. On July 2, 2018, the court granted the motion, striking all four counts of the plaintiff's amended substitute complaint. The court did not award the defendant any attorney's fees.

On July 13, 2018, the plaintiff filed another substitute

complaint incorporating counts one, two, and four from the April 6, 2018 complaint, specifically stating that she was doing so in order to preserve her right to appeal, and repleading count three, which alleged negligent infliction of emotional distress (operative complaint). In response, the defendant filed a motion to strike the operative complaint, again, *with prejudice*. The court granted the defendant's motion on September 10, 2018. On September 26, 2018, the defendant filed a motion for judgment, which the court granted on October 9, 2018. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court improperly struck each count of her operative complaint. We disagree.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117–18, 889 A.2d 810 (2006).

"[A]fter a court has granted a motion to strike, [a party] may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as the] filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . Stated another way: When an amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment, and previous rulings on the original pleading cannot be made the subject of appeal." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017).

"If the plaintiff elects to replead following the granting of a motion to strike, the defendant may take advantage of this waiver rule by challenging the amended complaint as not materially different than the [stricken] . . . pleading that the court had determined to be legally insufficient. That is, the issue [on appeal becomes] whether the court properly determined that the plaintiffs had failed to remedy the pleading deficiencies that gave rise to the granting of the motions to strike or, in the alternative, set forth an entirely new cause of action. It is proper for a court to dispose of

the substance of a complaint merely repetitive of one to which a demurrer had earlier been sustained. . . . Furthermore, if the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint."[4] (Citation omitted; internal quotation marks omitted.) Id., 850–51.

Having set forth our standard of review and the general principles of law concerning a motion to strike, we next address each count of the plaintiff's complaint. As to the first count of her complaint, which alleges wrongful discharge in breach of an implied employment contract, the plaintiff argues that the defendant's employee manual created an implied contract between the parties by imposing "standards of conduct" on her, and the defendant, thereafter, improperly discharged her without good cause and in violation of public policy. The defendant argues that there was no implied contract between the parties and that the plaintiff failed to set forth any language from the employee manual that would create such a contract. Additionally, the defendant argues that the plaintiff also failed to allege any particular public policy that supposedly was violated by the defendant's discharge of her from her at-will employment. We conclude that the court properly struck this count of the plaintiff's complaint.

We have examined thoroughly the plaintiff's claim for wrongful termination in breach of an implied contract, and we conclude that the factual allegations contained in the complaint neither set forth the facts essential to the establishment of an implied contract nor specify any particular public policy that was alleged to have been implicated by her discharge from the defendant's employ. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, 303 Conn. 205, 213, 32 A.3d 296 (2011) ("[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged" [internal quotation marks omitted]); *Binkowski* v. *Board of Education*, 180 Conn. App. 580, 585, 184 A.3d 279 (2018) ("[a motion to strike] admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" [internal quotation marks omitted]). Accordingly, the court properly struck this count.[5]

As to the second count of the operative complaint, which incorporated for purposes of preservation the cause of action for defamation, newly pleaded in the April 6, 2018 substitute complaint, the plaintiff alleged that the defendant made false statements regarding why the plaintiff was terminated when it contested the plaintiff's claim for unemployment benefits. We conclude that the court properly struck this count.

First, there is nothing in the record that indicates

that the plaintiff sought the permission of the court or the agreement of the defendant to amend her complaint by adding a new cause of action after the case was remanded to the trial court by this court. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 851 n.4; *Stone* v. *Pattis*, 144 Conn. App. 79, 94, 72 A.3d 1138 (2013); see also W. Horton & K. Knox, supra, § 10-44, authors' comments, p. 523; footnote 5 of this opinion. Additionally, it is clear that any statements made by representatives of the defendant before the Employment Security Division of the Department of Labor when contesting the plaintiff's eligibility for unemployment benefits are absolutely privileged because such proceedings are quasi-judicial in nature. See *Petyan* v. *Ellis*, 200 Conn. 243, 246–49, 510 A.2d 1337 (1986).

In *Petyan*, our Supreme Court cited with approval the reasoning by the court, *Berdon, J.*, in *Magnan* v. *Anaconda Industries, Inc.*, 37 Conn. Supp. 38, 42, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984), insofar as it opined that "an employer who discharges an employee has an absolute privilege when supplying the information necessary for the unemployment notice required by regulation. The court based its decision on the conclusion that the information is furnished in connection with a quasi-judicial function of an administrative board. That court found that in unemployment compensation proceedings [t]he administrator, the referee and the review board, including witnesses in proceedings before them, are absolutely privileged to publish defamatory matters provided such statements have some relation to the quasi-judicial proceeding." (Footnote omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 247. Our Supreme Court then extended the reasoning in *Magnan*, holding: "In the processing of unemployment compensation claims, the administrator, the referee and the employment security board of review decide the facts and then apply the appropriate law. . . . The employment security division of the labor department, therefore, acts in a quasi-judicial capacity when it acts upon claims for unemployment compensation." (Citation omitted; footnotes omitted.) Id., 248–49. Accordingly, the court properly struck the plaintiff's cause of action sounding in defamation.

As to the plaintiff's cause of action for negligent infliction of emotional distress, she argues that she provided the necessary allegations in her operative complaint to support this count.[6] The defendant argues that the plaintiff's pleading remained insufficient as a matter of law and that the court, therefore, properly struck this count. Having examined the operative complaint, we agree with the defendant that this count is pleaded insufficiently as a matter of law and, therefore, that the court properly struck it.

The essential allegations of the plaintiff's claim of

negligent infliction of emotional distress are that the defendant improperly withheld from her three personal folders that contained various certificates and personal records when it wrongfully discharged her from employment, and that it made up false allegations of wrongdoing when it contested her eligibility for unemployment benefits. As we held previously in this opinion, statements made by representatives of the defendant before the Employment Security Division of the Department of Labor when contesting the plaintiff's eligibility for benefits are absolutely privileged because such proceedings are quasi-judicial in nature. See *Petyan* v. *Ellis*, supra, 200 Conn. 246–49. Omitting the statements made by the defendant when contesting the plaintiff's eligibility for such benefits because they are privileged, the plaintiff is left with only the allegation that the defendant improperly withheld her three personal folders when it wrongfully discharged her from employment.[7]

Our Supreme Court has explained that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997) (holding it was not patently unreasonable for employer to remove employee who had been terminated from its premises under security escort). In this case, the plaintiff alleged that the defendant withheld three personal folders that contained various certificates and personal records when it discharged her. She made no allegations that the documents in these folders were irreplaceable or of such value that it was patently unreasonable for the defendant to withhold them. Accordingly, we agree with the trial court that her claim for negligent infliction of emotional distress was pleaded insufficiently.

As for her CUTPA count, the plaintiff argues that she sufficiently pleaded her cause of action because she "alleged false and deceptive claims being made by the defendant to intentionally deprive her of benefits to which she was entitled . . . ." Although the plaintiff concedes that an employer-employee relationship does not give rise to a CUTPA claim; see *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 670, 613 A.2d 838 (1992) (employer-employee relationship does not fall within definition of trade or commerce for purposes of action under CUTPA); she argues in her appellate brief that *Quimby* "would not be applicable to [the] defendant's defamation after [the] plaintiff was discharged, i.e., false statements made to the State of Connecticut Unemploy-

ment Commission regarding [the] plaintiff's reliability and integrity." We conclude that the court also properly struck this count. The plaintiff does not allege any acts committed by the defendant in the "conduct of any trade or commerce"; (internal quotation marks omitted) id. ("terms trade and commerce are defined in General Statutes § 42-110a [4] as 'the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state' "); and the allegations she does make clearly fall outside of CUTPA. Furthermore, the only posttermination conduct relied on by the plaintiff are statements made by the defendant to the Employment Security Division of the Department of Labor. Because such statements are protected by an absolute privilege, they cannot be used by the plaintiff as a basis for her CUTPA claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff had brought a claim of racial discrimination before the Commission on Human Rights and Opportunities, which, on August 25, 2014, issued a release of jurisdiction pursuant to General Statutes § 46a-100 et seq. That release required the plaintiff to commence an action in the Superior Court, within ninety days, alleging discrimination under the Connecticut Fair Employment Practices Act. Although having commenced the present action on September 3, 2014, within the ninety day timeframe, the plaintiff did not allege a claim of racial discrimination in violation of the Connecticut Fair Employment Practices Act in her original complaint. In fact, it was not until she filed her substitute complaint on August 20, 2015, that she raised such a claim.

[2] Notwithstanding the judgment of dismissal rendered on January 6, 2016, dismissing the case in its entirety, the plaintiff, on May 11, 2016, filed another substitute complaint alleging (1) tortious conduct, (2) racial discrimination and (3) a violation of CUTPA. Because the case already had been dismissed by the trial court, however, there was no action pending in which the plaintiff could file a substitute pleading and the trial court properly ignored it.

[3] The record contains no pleading pursuant to Practice Book § 10-60 requesting permission to add new counts or containing the written consent of the defendant to the addition of new counts. We also note that this court remanded the case for the express purpose of giving the plaintiff "the opportunity either to defend herself against a motion to dismiss *those counts* or to replead *the stricken counts*." (Emphasis added.) *Sempey* v. *Stamford Hospital*, supra, 180 Conn. App. 624.

As explained by our Supreme Court in *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 851 n.4, 168 A.3d 479 (2017): "An example of a proper pleading filed pursuant to Practice Book § 10-44 is one that [supplies] the essential allegation lacking in the complaint that was stricken. . . . It may not assert an entirely new cause of action premised on a legal theory not previously asserted in the stricken complaint, which would require permission under Practice Book § 10-60 (a)." (Citation omitted; internal quotation marks omitted.)

[4] Despite the fact that this principle arguably could preclude review of the court's decision to strike the first, second, and fourth counts of the plaintiff's operative complaint, the defendant has not made such an argument in its brief. It, instead, has chosen to address the merits of each count. Consequently, we also will address the merits.

[5] Additionally, it appears that the plaintiff waived her right to replead this cause of action as a matter of right when she filed her first substitute complaint, abandoning her claim of wrongful discharge, after it had been stricken from the original complaint, and, instead, asserting a new claim for racial discrimination. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 850 ("[w]hen an amended pleading is filed, it operates as a waiver

of the original pleading" [internal quotation marks omitted]). The record contains no indication that the plaintiff sought the permission of the court or the agreement of the defendant to amend her complaint by adding a new cause of action, if one could consider this a new cause of action, after the case had been remanded by this court for the sole purpose of allowing the plaintiff to replead her negligent infliction of emotional distress and CUTPA claims. "The right to file a substituted pleading after the granting of a motion to strike does not give the pleader the right to amend the pleading to add additional causes of action. *Stone* v. *Pattis*, 144 Conn. App. 79, [94,] 72 A.3d 1138 (2013). . . . [S]uch an amendment should be handled under [Practice Book §§] 10-60 [and] 10-59 et seq." W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules (2018-2019 Ed.) § 10-44, authors' comments, p. 523; see also *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 851 n.4.

In the present case, the plaintiff did not replead this cause of action after it was stricken for insufficiency on August 6, 2015. Instead, she abandoned such a claim, choosing to recast count one to allege employment discrimination. Nearly three years later, on April 6, 2018, after this court affirmed the court's judgment rejecting her discrimination cause of action, the plaintiff filed a substitute complaint repleading the cause of action for wrongful discharge that she had abandoned when she chose not to replead it after it had been stricken from her original complaint. The defendant filed a motion to strike this count, arguing in part that it already had been stricken from the plaintiff's original complaint. Given the procedural history of this case, we conclude that, even if the plaintiff had pleaded sufficient facts in the operative complaint to support a cause of action of wrongful discharge, this count was properly stricken. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 851 n.4.; *Stone* v. *Pattis*, supra, 144 Conn. App. 94.

[6] The plaintiff, in her appellate brief, devotes only one paragraph to this claim. Specifically, she sets forth the following: "The [negligent infliction of emotional distress] allegations in the [operative] complaint allege all necessary elements of emotional distress. The essence of a cause of action for negligent infliction of emotional distress is that the defendant breached a duty of care owed to [the] plaintiff by [the] defendant negligently acting so as to create an unreasonable risk to [the] plaintiff of emotional distress and his conduct caused such distress. *Montinieri* v. *Southern New England Telephone Co*., 175 Conn. 337, 398 A.2d 1180 (1978). Applying the standard of the reasonable and prudent person, the test in this case is whether [the] defendant, a medical supplier of many years, should have realized his acts were likely to cause [the] plaintiff such distress. Id., 345; [D. Wright et al., Connecticut Law of Torts (3d Ed. 1991) § 30, p. 46]."

The defendant, in its appellate brief, argued, in part, that the plaintiff's "arguments on appeal do nothing to address the lack of sufficient, well-pleaded factual allegations in support of her claim of negligent infliction of emotional distress. Rather, her arguments merely state in conclusory fashion that this claim was sufficiently alleged and provide no analysis or substantive argument in support of that proposition." The plaintiff did not file a reply brief.

[7] The plaintiff did not allege that the defendant made false allegations of wrongdoing outside of the context of contesting her eligibility for unemployment benefits with the Employment Security Division of the Department of Labor.