******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MATVEY SOKOLOVSKY *v.* WILLIAM MULHOLLAND ET AL.
## (AC 43937)

Moll, Clark and Sheldon, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for alleged discriminatory conduct. The plaintiff filed a discrimination complaint with the Commission on Human Rights and Opportunities alleging that the defendant town of East Lyme discriminated against him on the basis of national origin by denying him equal services and by treating him differently than his neighbors. The commission issued a release of jurisdiction, concluding that the evidence was insufficient to warrant further investigation. The Superior Court granted the plaintiff's application for a waiver of fees, and the plaintiff subsequently served the defendants with a summons and complaint. The defendants filed a motion to dismiss the complaint on the ground that the court lacked subject matter jurisdiction pursuant to statute (§ 46a-101), because the plaintiff commenced the action more than ninety days after he received the release of jurisdiction. The trial court granted the motion to dismiss, concluding that the time limitation in § 46a-101 was subject matter jurisdictional and not subject to equitable tolling. The court determined that, although the plaintiff had filed an application for a waiver of fees, the plaintiff's complaint was commenced, by service of the summons and complaint, beyond the ninety day limitation period. The court also concluded that the plaintiff improperly failed to plead the continuing course of conduct doctrine in his complaint in order for it to consider its affect on the limitation period. On the plaintiff's appeal to this court, *held*:

1. The trial court erred in concluding that the ninety day limitation period for commencing an action pursuant to the applicable statute (§ 46a-100) was subject matter jurisdictional: neither the language of § 46a-101 nor its legislative history revealed any indication that the legislature intended the time limitation of that statute to be jurisdictional, the geneaology of our antidiscrimination laws suggested an ongoing legislative intent to expand a complainant's right to seek a remedy for acts of discrimination, these factors underscored the remedial nature of the statutory scheme and weighed against a conclusion that the legislature intended to make the time limitation in § 46a-101 jurisdictional, and this court located support for its conclusion that the time limitation in § 46a-101 was mandatory and, thus, subject to waiver and equitable tolling, from state and federal case law.

2. The plaintiff could not prevail on his claim that the trial court improperly dismissed his action, which was based on his claim that the court erred by not considering the action commenced on the date that he filed his application for a waiver of fees: pursuant to §§ 46a-100 and 46a-101, the plaintiff had ninety days from the date that he received the release of jurisdiction to commence an action in the Superior Court, and, although the plaintiff filed an application for a waiver of fees, he did not serve the summons and complaint on the defendants until after the statutory limitation period had expired; moreover, the plaintiff did not provide any support for the proposition that the filing of an application for a waiver of fees tolled the limitation period while the application remained pending, and, even if his application did toll the deadline until the date that the court granted the application, the plaintiff's action would still have been untimely filed.

3. The trial court erred in concluding that the plaintiff was required to plead the continuing course of conduct doctrine in his complaint; this court found nothing in the applicable rule of practice (§ 10-57) that suggested, much less required, that the continuing course of conduct doctrine must be pleaded in the complaint, no special defense raising a limitations defense was filed by the defendants to which the plaintiff could have replied, the defendants raised the ninety day limitation period for the first time in their motion to dismiss, and the plaintiff raised the continuing course of conduct doctrine in his opposition to that motion.

Argued October 13, 2021—officially released June 7, 2022

*Procedural History*

Action for, inter alia, the defendants' alleged discrimination, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Knox, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Matvey Sokolovsky*, self-represented, the appellant (plaintiff).

*Ryan J. McKone*, for the appellees (defendants).

*Michael E. Roberts* and *Kimberly A. Jacobsen*, human rights attorneys, filed a brief on behalf of the Commission on Human Rights and Opportunities as amicus curiae.

*Opinion*

CLARK, J. The self-represented plaintiff, Matvey Sokolovsky, appeals from the judgment of the trial court granting a motion to dismiss filed by the defendants, the town of East Lyme; William Mulholland, zoning official; and Mark C. Nickerson, first selectman. Although the plaintiff's claims on appeal are not a model of clarity, he appears to argue that the court erred by concluding that (1) the ninety day time limitation set forth in General Statutes § 46a-101 (e)[1] for commencing an action in Superior Court pursuant to General Statutes § 46a-100[2] is subject matter jurisdictional, (2) his application for a waiver of fees did not commence the action, and (3) he was required to specially plead the continuing course of conduct doctrine in his complaint in order for the court to consider its effect on the limitation period. We conclude that the time limitation in § 46a-101 (e) is not subject matter jurisdictional but, rather, is mandatory and subject to consent, waiver, and equitable tolling. As a result, we reverse the judgment of the court and remand the case for further proceedings consistent with this opinion.

We begin by setting forth the relevant facts, as found by the trial court, in addition to the procedural history in this case. On September 20, 2017, the plaintiff filed a discrimination complaint with the Commission on Human Rights and Opportunities (commission) alleging that the town of East Lyme had discriminated against him on the basis of national origin by denying him equal services. On November 6, 2018, the commission issued a release of jurisdiction to the plaintiff, concluding that the evidence presented to it was insufficient to warrant further investigation. The release of jurisdiction stated: "The [c]omplainant must bring an action in Superior Court within [ninety] days of receipt of this release and within two years of the date of filing the complaint with the [c]ommission unless circumstances tolling the statute of limitations are present."

On January 31, 2019, the plaintiff filed an application for a waiver of fees with the Superior Court, which was granted on February 4, 2019. The defendants subsequently were served with a writ of summons and complaint on February 22, 2019, which was returned to the court on February 26, 2019.

On July 10, 2019, the defendants filed a motion to dismiss arguing that the court lacked subject matter jurisdiction pursuant to § 46a-101 (e) because the plaintiff had commenced the action more than ninety days after he had received the release of jurisdiction, also commonly known as a right to sue letter, from the commission. Before the court had rendered a decision, the commission filed an application requesting permission to file an amicus curiae brief addressing the question of whether the ninety day filing requirement in

§ 46a-101 (e) is subject matter jurisdictional. The court granted the application on November 7, 2019. In its brief, the commission argued that the ninety day time limitation should be interpreted as a mandatory, rather than a jurisdictional, time limitation.[3] The defendants filed a reply brief arguing that the court need not address the jurisdictional issue because there was no dispute as to the mandatory nature of § 46a-101 (e). The court heard oral argument on the motion to dismiss on December 16, 2019, and issued its decision on January 15, 2020.

In its memorandum of decision, the court noted that the complaint was written in narrative form and that it had considered carefully the statements contained therein. The court observed that the plaintiff was claiming that the defendants were treating him in a discriminatory manner by treating him differently than his neighbors. The court explained: "First, the plaintiff alleges that, in 2017, the defendants failed to investigate the plaintiff's complaint against his neighbors for moving their shed closer to his property, which he believes does not comply with the town of East Lyme's zoning ordinances. Second, the plaintiff alleges that in May of 2017, Zoning Official William Mulholland, sent him a letter regarding a complaint made by the plaintiff's neighbors about multiple unregistered vehicles on his property in violation of the town of East Lyme's zoning ordinances. . . . Specifically, the plaintiff alleges that he believes he was 'held to a higher standard than [his] neighbors' and that the 'neighbors [were] allowed to violate zoning rules despite clear evidence of their violation.' " (Footnote omitted.)

The court then addressed the defendants' motion to dismiss. The court explained that there was a split of authority on the issue of whether the time limitation in § 46a-101 (e) is subject matter jurisdictional or mandatory and subject to equitable tolling. It noted, however, that the "majority of Superior Courts recognize that a plaintiff's failure to comply with the time limitation in § 46a-101 (e) deprives the court of subject matter jurisdiction." After discussing this apparent split of authority, the court "adopt[ed] the prevailing position among the Superior Courts and conclude[d] that the plaintiff's failure to meet the time limitation" of the statute required dismissal of the action.

The court went on to find that the plaintiff received the release of jurisdiction from the commission on November 6, 2018, but did not serve the defendants with a writ of summons and complaint until February 22, 2019. The court explained that, although the plaintiff had filed an application for a waiver of fees on January 31, 2019, it is well established that an action is commenced when the writ of summons and complaint have been served on the defendant. Accordingly, the court concluded that the plaintiff's complaint was com-

menced beyond the ninety day time limitation set forth in § 46a-101 (e).

Notwithstanding its determination that the time limitation in § 46a-101 (e) was subject matter jurisdictional and that the plaintiff's action had been untimely commenced, the court also addressed the plaintiff's argument that the continuing course of conduct doctrine tolled the limitation period. The court concluded that the continuing course of conduct doctrine must be pleaded in avoidance of the statute of limitations and that the plaintiff had "failed to plead the continuing course of conduct doctrine in his complaint." The court ultimately dismissed the plaintiff's complaint for lack of subject matter jurisdiction. This appeal followed.

I

We first address whether the ninety day time limitation of § 46a-101 (e) is subject matter jurisdictional. Several factors convince us that the ninety day time limitation for commencing an action in Superior Court pursuant to § 46a-100 is mandatory and not jurisdictional.

We begin by setting forth our standard of review. "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Our review of a trial court's ruling on a motion to dismiss is de novo and *we indulge every presumption favoring jurisdiction*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Sempey* v. *Stamford Hospital*, 180 Conn. App. 605, 612, 184 A.3d 761 (2018).

We next turn to the legal principles that underlie the plaintiff's claim. In *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 259–60, 777 A.2d 645 (2001), our Supreme Court considered whether the statutory 180 day period set forth in General Statutes (Rev. to 2001) § 46a-82 (e), now codified at General Statutes § 46a-82 (f), for filing a discrimination complaint with the commission was subject matter jurisdictional. The court held that, although mandatory, "the 180 day time requirement for filing a discrimination petition pursuant to § 46a-82 (e) is not jurisdictional but, rather, is subject to waiver and equitable tolling." Id., 264. In so doing, the court explained that "[a] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject mat-

ter jurisdictional defect may not be waived . . . [and] may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. . . . Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." (Citations omitted.) Id., 266.

The court also recognized that it previously had applied inconsistent approaches in determining whether a time limitation is jurisdictional. Id., 267. "In [some] cases, the court, in discerning the intent of the legislature, at times [has] *equated* the intent of the legislature to create a mandatory limitation with the intent to create a subject matter jurisdictional limit." (Emphasis in original.) Id., 268. In other cases, the court "implicitly [has held] that a conclusion that a time limit is mandatory does not necessarily mean that it is also subject matter jurisdictional, because the notions of waiver and consent are fundamentally inconsistent with the notion of subject matter jurisdiction." Id., 269. The court then went on to clarify the difference between mandatory and jurisdictional time limitations and explained the analysis to be undertaken when deciding whether a time limitation is jurisdictional. Id., 269–70. The court stated: "Although we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. In the absence of such a showing, mandatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties. Such time limitations do not, however, implicate the subject matter jurisdiction of the agency or the court." Id.

Although *Williams* dealt only with the time limit for filing a complaint of discrimination with the commission, the plaintiff and the amicus curiae argue that *Williams* is pertinent to our analysis of whether § 46a-101 (e) is subject matter jurisdictional.[4] They argue that the decisions in which our Superior Courts have concluded that § 46a-101 (e) is jurisdictional did not consider or discuss the *Williams* decision in their consideration of the issue. We are persuaded that *Williams* provides the relevant framework for our analysis, keeping in mind that, "[i]n light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) Id., 269.

As noted in *Williams*, the question of whether a time limitation implicates a court's subject matter jurisdic-

tion is a question of statutory interpretation. We therefore begin our analysis with the language of the statute itself. See General Statutes § 1-2z;[5] see also *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 263, 788 A.2d 60 (2002) ("[a]s with any issue of statutory interpretation, our initial guide is the language of the statute itself" (internal quotation marks omitted)). Section 46a-101 (e) provides: "Any action brought by the complainant in accordance with section 46a-100 shall be brought not later than ninety days after the date of the receipt of the release from the commission." Although the word "shall" reflects the legislature's intent to require a complainant to commence an action within the time limitation set forth in the statute, the word "shall" is not by itself clear evidence that the legislature intended the time limitation to be jurisdictional rather than mandatory. See *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn.*, *Inc.*, 273 Conn. 373, 380, 870 A.2d 457 (2005) ("[w]e concluded in *Williams* that a determination that a time limit is mandatory does not necessarily mean that it also is subject matter jurisdictional"). Although "mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar." *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 269–70.

As a result, we must look to other sources to determine the legislature's intent. See *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 850, 71 A.3d 619 (2013) ("Our inquiry, however, does not end with the text of [the statute]. We also have carefully reviewed the legislative history . . . ."). First, our review of the legislative history of § 46a-101 (e) reveals no indication that the legislature intended the time limitation of that statute to be jurisdictional. The only discussion of jurisdiction in the legislative history pertained to the question of whether the commission would retain jurisdiction over a complaint after it granted a release, not whether the deadline for commencing an action in the Superior Court is jurisdictional. See 34 H.R. Proc., Pt. 23, 1991 Sess., p. 8926, remarks of Representative Robert Frankel. The legislative history discloses that an earlier draft of the law; see Substitute Senate Bill No. 292, 1991 Sess.; contained a provision that provided that, "[u]pon granting a release, the commission *may* dismiss the discriminatory practice complaint pending with the commission." (Emphasis added.) Representative Edward Krawiecki, however, drew attention to this provision indicating that "[t]his seems to indicate that there are going to be two [forums] where the action continues to pend. If the commission decides to have a fight with whoever the person bringing the complaint is, for example, they

may very well leave the action pending before the commission and at the same time you're in Superior Court, and through you, Mr. Speaker, it would seem to me that the language should have been it shall be dismissed and I'm just wondering, through you, Mr. Speaker, what the intention of the committee is." See 34 H.R. Proc., supra, pp. 8924–8925, remarks of Representative Edward Krawiecki. Representative Frankel addressed Representative Krawiecki's concern, stating that "[i]n the course of debate a number of us in studying, it does appear that there should not be a jurisdiction presiding in two places in two causes of action. The 'may' should certainly be changed to a 'shall' in line 39. With a view towards receiving an amendment to do that, I move this item be passed temporarily." Id., p. 8926. The bill ultimately passed with an amendment reflecting the change discussed during the debate in the House of Representatives. See Public Acts 1991, No. 91-331, § 2; see also General Statutes § 46a-101 (d). Thus, neither the language of the statute nor its legislative history evinces a clear intent by the legislature to impose a jurisdictional bar to claims brought outside of the time limitation contained in § 46a-101 (e).

Having reviewed the statute's language and the legislative history, we next look to the general purpose and genealogy of Connecticut's antidiscrimination statutes. See *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, supra, 273 Conn. 380 (in *Williams*, "[we] concluded that, despite statutory language that appeared mandatory, the genealogy and legislative history of the statute, as well as our case law addressing the policy underlying the statute, reflected a legislative intent not to impose a jurisdictional bar to complaints filed after the prescribed period"). Our Supreme Court has observed that the general remedial purpose of our antidiscrimination statutes "is, in general, to construct a remedy for discrimination 'that will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future.' " *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 694, 855 A.2d 212 (2004). Furthermore, our Supreme Court has recognized that the legislative genealogy and history of earlier antidiscrimination laws spanning from the 1960s to the 1980s indicate "an intent to authorize a broad, rather than a limited, scope of damages, including damages protective of the 'dignity' of an individual." Id. The court observed that the legislative genealogy of these laws "[suggests] an ongoing legislative process of expanding the commission's authority to award damages." Id.

Indeed, the genealogy of our antidiscrimination laws in general suggests an ongoing legislative intent of expanding a complainant's right to seek a remedy for acts of alleged instances of discrimination. For example, Public Acts 1991, No. 91-331, § 2, which first intro-

duced the ninety day limitation at the heart of this appeal, expanded the rights of complainants by affording those who filed employment complaints that were still pending with the commission after 210 days the right to request a release from the commission in order to bring a private right of action in Superior Court. Subsequent amendments to the law expanded this right beyond just employment discrimination claims; see Public Acts 1998, No. 98-245, § 6; and decreased the number of days that a complainant must wait in order to obtain a release of jurisdiction from the commission. See Public Acts 2011, No. 11-237, § 14.

More recently, the legislature amended § 46a-82 (f) to provide claimants with more time to file claims of discrimination with the commission.[6] See Public Acts 2021, No. 21-109, § 5. The law now allows claimants to file all types of discriminatory practice complaints with the commission within 300 days after an alleged act of discrimination that occurs on or after October 1, 2021, whereas earlier iterations of the law required such complaints to be filed with the commission within 180 days. See General Statutes (Supp. 2022) § 46a-82 (f) (2).

The aforementioned legislative history and genealogy, although only one factor in our analysis, underscore the remedial nature of our state's antidiscrimination statutory scheme, including § 46a-101 (e), and weighs against a conclusion that the legislature intended to make the time limitation set forth in § 46a-101 (e) jurisdictional. This remedial nature is similarly highlighted in our case law, where we are reminded that antidiscrimination provisions should be "liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 197, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

For example, in *Vollemans*, the plaintiff, alleging discriminatory termination on account of his age, was discharged on January 21, 2003. Id., 191. He filed a complaint with the commission on June 3, 2003. Id. The commission concluded, and the Superior Court agreed, that the plaintiff's claim was barred by the 180 day limitation period in § 46a-82 (e) because he had received "a definite notice of his termination . . . sometime before November 13, 2002 . . . ." (Internal quotation marks omitted.) Id., 191–92. On appeal to this court, the pertinent issue was the proper interpretation of § 46a-82 (e). Id., 195. We stated that our "task [was] to determine, in an age discrimination action in which the allegedly discriminatory practice is the termination of employment, precisely when the alleged act of discrimination transpires." Id. Specifically, we were called on to decide whether the alleged act of discrimination occurred on the final day of the plaintiff's employment or on the date the plaintiff was notified of the termina-

tion of his employment. Id., 219. This court concluded that the pertinent date was the final date of the plaintiff's employment. Id. In so doing, we stated that "[l]iberally construing that statutory provision and mindful of the legislature's intent to avoid the defeat of such complaints for filing faults rather than on their merits, we conclude that the filing period contained in § 46a-82 (e) commences upon actual cessation of employment, rather than notice thereof." Id., 218–19. Our Supreme Court affirmed this court's judgment, noting that "the thoughtful and comprehensive opinion of the Appellate Court majority properly resolved the issues in this certified appeal," and that its own discussion "would serve no useful purpose." *Vollemans* v. *Wallingford*, 289 Conn. 57, 61, 956 A.2d 579 (2008).

Similarly, in *Commission on Human Rights & Opportunities* v. *Board of Education*, supra, 270 Conn. 667–69, our Supreme Court was tasked with determining whether the commission has subject matter jurisdiction pursuant to General Statutes § 46a-58 (a), to adjudicate a claim of racial discrimination brought by a student in a public school against a school principal and a local board of education on the basis of a discrete course of allegedly discriminatory conduct by the principal, or whether exclusive jurisdiction to adjudicate such a claim is vested in the state board of education pursuant to General Statutes §§ 10-4b and 10-15c. In reviewing the language and genealogy of the statutes in question, our Supreme Court held that the jurisdiction of the state board of education under § 10-4b is not exclusive and that the commission also may exercise jurisdiction over such claims under § 46a-58 (a). Id., 722. In reaching this conclusion, the court emphasized that remedial statutes must be construed liberally to effectuate legislative intent, concluding that "the broadly defined subject matter of [§ 46a-58 (a)'s] protection, namely, the deprivation of all of the rights, privileges or immunities secured by both the state and federal laws and constitutions, strongly suggests that it applies to a discrete course of conduct constituting racial discrimination against a student in a public school by educational officials . . . ." Id., 708. The court further stated that "[t]he genealogy of § 46a-58 (a) . . . points strongly in the same direction, because it indicates a consistent history of the statute's retaining its core protection—the rights, privileges or immunities secured by the state or federal laws or constitutions— while expanding both the ways in which its core protection may be enforced and the types of discrimination to which it applies." Id. These cases further underscore the remedial nature of our antidiscrimination laws and weigh against an interpretation of § 46a-101 (e) that would preclude a claimant from making an equitable tolling argument against dismissal of an action that was commenced after the statutory deadline.

Federal antidiscrimination case law provides further

support for our conclusion that the time limitation in § 46a-101 (e) is not subject matter jurisdictional. See *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 278 ("[w]e have often looked to federal . . . discrimination law for guidance in enforcing our own anti-discrimination statute" (internal quotation marks omitted)). Following the United States Supreme Court's decision in *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982), which held that "filing a timely charge of discrimination with the [Equal Employment Opportunity Commission] is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," many federal courts were confronted with the question of whether the rationale employed in *Zipes*[7] should be applied to Title VII's[8] ninety day requirement for filing suit in federal court following the receipt of an Equal Employment Opportunity Commission right to sue letter, or whether it should be considered jurisdictional. See 42 U.S.C. § 2000e-5 (f) (1) (2018).[9] It appears that federal courts uniformly have interpreted § 2000e-5 (f), the federal counterpart to § 46a-101 (e), as being nonjurisdictional. See, e.g., *Brown* v. *John Deere Product, Inc.*, 460 Fed. Appx. 908, 909 (11th Cir. 2012); *Crabill* v. *Charlotte Mecklenburg Board of Education*, 423 Fed. Appx. 314, 321 (4th Cir. 2011); *Truitt* v. *Wayne*, 148 F.3d 644, 646–47 (6th Cir. 1998); *Williams-Guice* v. *Board of Education*, 45 F.3d 161, 165 (7th Cir. 1995); *Jarrett* v. *U.S. Sprint Communications Co.*, 22 F.3d 256, 259–60 (10th Cir.), cert. denied, 513 U.S. 951, 115 S. Ct. 368, 130 L. Ed. 2d 320 (1994); *Scholar* v. *Pacific Bell*, 963 F.2d 264, 266 (9th Cir.), cert. denied, 506 U.S. 868, 113 S. Ct. 196, 121 L. Ed. 2d 139 (1992); *Hill* v. *John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989); *Mosel* v. *Hills Dept. Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986); *Espinoza* v. *Missouri Pacific Railroad Co.*, 754 F.2d 1247, 1250 (5th Cir. 1985); *Johnson* v. *Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984); *Fouche* v. *Jekyll Island-State Park Authority*, 713 F.2d 1518, 1525 (11th Cir. 1983); *Rice* v. *New England College*, 676 F.2d 9, 10 (1st Cir. 1982); *Gordon* v. *National Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982).

Having reviewed all of the factors that our Supreme Court analyzed in *Williams* when it determined that the statute at issue in that case was mandatory and not jurisdictional, including the statute's language, legislative history, genealogy, purpose, and relation to other statutes, as well as federal case law interpreting the federal statutory analog to § 46a-101 (e), we are convinced that § 46a-101 (e) is a mandatory time limitation, subject to waiver and equitable tolling. Simply put, none of those factors evinces a clear legislative intent to contravene our long recognized presumption in favor of jurisdiction. On the contrary, interpreting the dead-

line as jurisdictional would frustrate the remedial purpose of that statute by barring litigants from pursuing claims of discrimination even in cases in which common-law equitable principles would otherwise toll the deadline for bringing such claims.

Having concluded that the time limitation in § 46a-101 (e) is mandatory and not jurisdictional, we next consider whether dismissal was nevertheless appropriate in this case. The plaintiff appears to argue that the court erred by not considering the action commenced for purposes of § 46a-101 (e) on the date he filed his application for a waiver of fees. He argues that he is not a lawyer and questions how an ordinary person would know that, in order to commence an action, he was required to serve a writ of summons and complaint within the statutory deadline rather than simply filing within that time period his application for a waiver of fees. Relatedly, he appears to argue that fairness is at the "core [of his] situation" and that he should be excused from his untimely filing. We disagree.

Pursuant to §§ 46a-100 and 46a-101 (e), the plaintiff had ninety days from the date on which he received the release of jurisdiction from the commission to commence his action in the Superior Court. The plaintiff received the release of jurisdiction from the commission on November 6, 2018.[10] The plaintiff, therefore, was required to commence his action by February 4, 2019.

This court has held that, in order for an action to be timely brought under § 46a-101 (e), it must be *commenced*, as that term is understood under Connecticut law, no later than ninety days after receipt of the release. See *Mosby* v. *Board of Education*, 187 Conn. App. 771, 774, 203 A.3d 694, cert. denied, 331 Conn. 917, 204 A.3d 1160 (2019). It is bedrock principle that, "in Connecticut, an action is commenced not when the writ is returned but when it is served upon the defendant." (Internal quotation marks omitted.) Id.

Although the plaintiff filed his application for a waiver of fees on January 31, 2019, he did not serve the summons and complaint on the defendants until February 22, 2019. It is clear that the plaintiff failed to satisfy the mandate of the statute because he commenced the action after February 4, 2019—the deadline prescribed by the statute. The fact that the plaintiff is self-represented does not excuse him from compliance with the ninety day limitation period. See *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 42, 244 A.3d 171 (2020) ("ignorance of the limitation period or lack of legal experience generally is insufficient cause to excuse an untimely filed [action]"), aff'd, 343 Conn. 424, ___ A.3d ___ (2022).

Furthermore, to the extent the plaintiff's claim can be construed as arguing that the filing of his application for a waiver of fees tolled the limitation period during

the time that his application remained pending and undecided by the court, the plaintiff has not directed this court to any authority in support of that proposition.[11] Nevertheless, even if his fee waiver application did toll the deadline from the date he filed his application, January 31, 2019, to the date the court granted the application, February 4, 2019, he would have still been required to commence the action by February 8, 2019, which he failed to do. Accordingly, the plaintiff's argument that he timely commenced the action must be rejected.

II

The plaintiff next argues that the court erred in concluding that he was required to plead the continuing course of conduct doctrine in his complaint. We agree.

Although the court's determination that the time limit in § 46a-101 (e) was jurisdictional should have ended its analysis, the court went further and addressed the plaintiff's argument concerning the continuing course of conduct doctrine and concluded, as a matter of law, that because the plaintiff "failed to plead the continuing course of conduct doctrine in his complaint," it was precluded from considering whether the doctrine tolled the applicable time limitation.

Because we hold today that the time limit in § 46a-101 (e) is not jurisdictional, and, thus, is subject to equitable tolling, we address the plaintiff's claim because it likely will arise again on remand. See, e.g., *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 164 n.8, 971 A.2d 676 (2009) ("[w]e think it prudent to address the second issue because it is likely to arise on remand"). "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 386, 159 A.3d 220 (2017).

Practice Book § 10-57 provides: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded *in the reply*. Such a reply may contain two or more distinct avoidances of the same defense or counterclaim, but they must be separately stated." (Emphasis added.) Our Supreme Court has held that, "[u]nder § 10-57, the continuing course of conduct doctrine is a matter that must be pleaded in avoidance of a statute of limitations special defense." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 300, 94 A.3d 553 (2014).

On the basis of our review of the language of Practice Book § 10-57 and the relevant case law pertaining thereto, we have found nothing in that rule that sug-

gests, much less requires, that the continuing course of conduct doctrine be pleaded in the complaint. The rule clearly states that a matter in avoidance must be pleaded in "the reply." Practice Book § 10-57. Moreover, our Supreme Court expressly has held that matters in avoidance of a statute of limitations "need not be pleaded in the complaint." *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 392, 311 A.2d 74 (1972) ("[i]t has been and is the holding of this court that matters in avoidance of the [s]tatute of [l]imitations need not be pleaded in the complaint but only in response to such a defense properly raised"); see also, e.g., *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 691, 974 A.2d 764 ("we conclude that the court properly denied the plaintiffs' offer to prove the applicability of [General Statutes] § 52-592 after the close of evidence when it had not been pleaded in the complaint or as a matter in avoidance of the statute of limitations defense"), cert. denied, 293 Conn. 916, 979 A.2d 488 (2009); *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 312 Conn. 301 ("*Beckenstein Enterprises-Prestige Park, LLC*, does not, however, stand for the proposition that the pleading requirements are so rigid as to require that potentially meritorious claims in avoidance of the statute of limitations be categorically barred in all cases because of pleading lapses"); *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 430, 75 A.3d 78 (2013) (although plaintiff's reply did not "squarely comply" with Practice Book § 10-57, court was not precluded from reaching merits because plaintiff specifically stated in reply to defendants' motion for summary judgment that "statutes of limitations should be tolled based on the fraudulent concealment and continuing course of conduct doctrines").

In the present case, no special defense raising a limitations defense was filed by the defendants to which the plaintiff could have replied. The defendants raised the ninety day limitation period for the first time in their motion to dismiss, and the plaintiff raised the continuing course of conduct doctrine in his opposition to that motion to dismiss. Although a plaintiff certainly may choose to plead in his initial complaint a matter in avoidance of the statute of limitations when he knows the applicable statute of limitations has passed, we do not read our rules to require him to do so. Accordingly, we conclude that the court's determination that the plaintiff was required to specially plead the continuing course of conduct doctrine in his complaint in order for the court to consider its effect on the limitation period was erroneous.[12]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] General Statutes § 46a-101 (e) provides: "Any action brought by the complainant in accordance with section 46a-100 shall be brought not later than ninety days after the date of the receipt of the release from the commis-

sion."

[2] General Statutes § 46a-100 provides: "Any person who has filed a complaint with the commission in accordance with section 46a-82 and who has obtained a release of jurisdiction in accordance with section 46a-83a or 46a-101, may bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, the judicial district in which the respondent transacts business or the judicial district in which the complainant resides, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford."

[3] We note that the commission also filed an application for leave to file a brief in this appeal as amicus curiae, which this court granted. In its brief to this court, the commission indicated that it "does not take any position as to whether the plaintiff's case should ultimately have been dismissed below." It argued, however, that "to the extent . . . that the Superior Court premised its dismissal on the ninety day filing period in . . . § 46a-101 (e) . . . being jurisdictional, and not mandatory subject to equitable tolling, waiver, and consent, the commission submits that this was an error of law." (Footnote omitted.)

[4] We note that this court previously has recognized a split among the judges of the Superior Court who have addressed the question of whether § 46a-101 (e) is jurisdictional. See *Mosby* v. *Board of Education*, 187 Conn. App. 771, 775 n.5, 203 A.3d 694 ("we note that our Superior Court has been divided over whether the time limit in § 46a-101 (e) is jurisdictional"), cert. denied, 331 Conn. 917, 204 A.3d 1160 (2019); *Sempey* v. *Stamford Hospital*, supra, 180 Conn. App. 616 n.8 ("[w]e acknowledge that our Superior Court has been divided over this question"). It was unnecessary, however, for this court to reach that question in those appeals.

[5] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[6] General Statutes (Supp. 2022) § 46a-82 (f) provides: "(1) Any complaint filed pursuant to this section for an alleged act of discrimination that occurred prior to October 1, 2021, shall be filed within one hundred and eighty days after the date of the alleged act of discrimination, except that any complaint by a person (A) claiming to be aggrieved by a violation of subsection (a) of section 46a-80 that occurred before October 1, 2019, shall be filed within thirty days of the date of the alleged act of discrimination, and (B) claiming to be aggrieved by a violation of section 46a-60, sections 46a-70 to 46a-78, inclusive, or section 46a-80 or 46a-81c, that occurred on or after October 1, 2019, and prior to October 1, 2021, shall be filed not later than three hundred days after the date of the alleged act of discrimination.

"(2) Any complaint filed pursuant to this section for an alleged act of discrimination that occurred on or after October 1, 2021, shall be filed within three hundred days after the date of the alleged act of discrimination."

[7] In *Zipes*, the United States Supreme Court stated that, "[b]y holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Zipes* v. *Trans World Airlines, Inc.*, supra, 455 U.S. 398.

[8] Title VII of the Civil Rights Act of 1964, as amended by Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. (2018).

[9] Title 42 of the United States Code, § 2000e-5 (f) (1), provides in relevant part: "If a charge filed with the Commission pursuant to subsection (b), is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to

be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance."

[10] The plaintiff also claims that the court could not properly have considered the limitation period because there was no evidence as to when he received the right to sue letter. He argues that "there is no information whatsoever in the case on when I had received the release." We disagree. The record includes clear evidence supporting the trial court's finding that the plaintiff received the release on November 6, 2018. The court had before it an affidavit of Charles Perry, the commission's freedom of information officer, who attested that, on November 6, 2018, the commission transmitted its decision and release of jurisdiction to all parties, including the plaintiff. A copy of the e-mail sent to the parties containing the decision and the release was attached to the affidavit. The plaintiff submitted no evidence to the trial court contesting his receipt of the e-mail and its attachments on November 6, 2018. Moreover, he made no such argument in his opposition to the motion to dismiss. The only reference he made in his opposition with respect to the timing of the release was his statement that "the release happen[ed] on 11/06/2018." On the basis of the record before us, and in light of the reasonable inference that the e-mail was received on the same date it was sent, it was not clearly erroneous for the trial court to conclude that the plaintiff received the release of jurisdiction on November 6, 2018. Accordingly, this claim fails.

[11] In other contexts, the legislature specifically has indicated that the filing of an application for a waiver of fees tolls the time limits for filing an appeal. See, e.g., General Statutes § 45a-186c (in probate context, when appellant files fee waiver pursuant to § 45a-186c, time limit in § 45a-186 (a) is tolled until judgment on fee waiver is rendered); General Statutes § 4-183 (m) (under Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., "filing of the application for the waiver shall toll the time limits for the filing of an appeal until such time as a judgment on such application is rendered"); but see General Statutes § 46a-94a (b) (UAPA appeal provisions do not apply if complainant has been granted release pursuant to § 46a-101).

[12] Because it was not raised or addressed before the trial court, we do not decide whether the continuing course of conduct doctrine applies, as a matter of law, to actions commenced under § 46a-101 (e). See, e.g., *Bowen-Hooks* v. *New York*, 13 F. Supp. 3d 179, 207 (E.D.N.Y. 2014) (collecting cases addressing question of whether continuing violation theory applies to ninety day time limitation set forth in federal statutory analog to § 46a-101 (e)).